1   **WO**

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                       FOR THE DISTRICT OF ARIZONA

10

11   In re:                                )
                                            )   No. CV 07-319-PHX-MHM
12   Don's  Making  Money,  LLP,  Tropical)
     Beaches,  Inc.,  New  Strategies,  LLLP,)
13   Dolphin Media, LLLP, National Reminder)    **ORDER**
     Service, LLLP,                         )
14                                          )
     _____ )
15                                          )
                                            )
16   Charles L. Riley, Jr., Chapter 7 Trustee,)
                                            )
17           Plaintiff,                     )
                                            )
18   vs.                                     )
                                            )
19                                          )
     The Estate of Joseph A. Deihl and Sari)
20   Deihl, et. Al.,                        )
                                            )
21           Defendants.                    )
                                            )
22   _____ )

23

24           At  present,  this  case  has  four  pending  motions.    The  motions  are  as  follows.

25   Defendants have filed a Motion to Withdraw the Reference of this case to the United States

26   Bankruptcy Court (Doc. 2).  Plaintiff has filed a Motion to Compel Disclosure and Motion

27   for Sanctions (Doc. 4).  Both of these Motions are fully briefed.  Also pending are Plaintiff's

28   Motion to Accelerate the Ruling on Defendants' Motion to Withdraw the Reference (Doc.

1    9) and Defendants' Motion for Judgment on the Pleadings (Doc. 10).  After considering the

2    papers submitted, the Court issues the following Order.

3                                    BACKGROUND

4            Defendants, the Estate of Joseph A. Deihl, Sari Deihl, Universal Business Strategies,

5    Inc. ("UBS"), Mayor Pharmaceutical Laboratories, Inc., Karemore International, Inc.,

6    Vitamist, Inc., Regency Medical Group, Ltd. ("Regency"), Liberty Group International, Ltd.,

7    Creative Personnel Resources, Inc., Left Field Productions, Inc., Spoiled Brat, Ltd.

8    ("Defendants") have filed a Motion to Withdraw the Reference to the Bankruptcy Court

9    pursuant to 28 U.S.C. § 157.  Plaintiff Charles L. Riley, Jr. ("Plaintiff"), opposes Defendants'

10   Motion.

11           The relevant facts of this case are as follows.  In the early 1990s, Don Lapre started

12   an infomercial business called "Don's Making Money."  In 1991, "Don's Making Money"

13   filed for Chapter 11 bankruptcy protection.  Through the bankruptcy proceeding, Regency

14   Medical Group, Ltd. ("Regency") purchased the "Don's Making Money" infomercial

15   business.  The purchase agreement provided for Regency to pay $750,000 in cash and

16   additional payments of $2 million.  The sale was approved by the Bankruptcy Court and the

17   assets, including an account of $1,719,075.91, were transferred to Regency.  Regency made

18   the initial payment of $750,000 but failed to make any other payments.

19           Regency was owned and controlled by Defendants Joseph Deihl and Sari Deihl.  In

20   2001, the rights and obligations of Regency, including the assets of "Don's Making Money,"

21   were assigned to UBS, another entity owned and controlled by Defendants Mr. and Mrs.

22   Deihl.  UBS filed a Chapter 11 bankruptcy petition in 2003.  In relation to UBS's bankruptcy

23   proceeding, Plaintiff, the bankruptcy trustee for "Don's Making Money," obtained a judgment

24   against UBS for $2,320,000 plus interest.  In an effort to collect the judgment, Plaintiff filed

25   the instant complaint on or about November 2, 2005.

26           The instant case is an adversary proceeding initiated in Bankruptcy Court.  Federal

27   jurisdiction in this case is premised on 28 U.S.C. § 1334, the statute vesting in federal district

28   courts jurisdiction in bankruptcy cases and related proceedings.  In his Complaint, Plaintiff

has asserted seven causes of action.  The causes of action are as follows: alter ego/piercing the corporate veil (Count I); fraudulent transfer (Count II); common law fraud (Count III); negligent misrepresentation (Count IV); Arizona RICO claim pursuant to A.R.S. § 13-2414.04 (Count V); violation of corporate trust fund doctrine (Count VI); and unjust enrichment (Count VII).

In Defendants' instant Motion to Withdraw the Reference to the Bankruptcy Court, Defendants assert that the pending adversary proceeding involves the assertion of non-core claims.  Defendants claim that the case requires mandatory withdrawal to this Court because of Defendants' Seventh Amendment right to a jury trial and that withdrawing the reference would aid judicial efficiency and no prejudice would result.

Plaintiff opposes Defendants' Motion to Withdraw the Reference.  Plaintiff assert that Defendants' Motion to Withdraw is untimely and not warranted because this case involves non-core claims.  Plaintiff further asserts that the bankruptcy judge must determine whether the claims are core or non-core before a withdrawal of reference motion is appropriate in this Court.

## LEGAL STANDARD

Title 28 of the United States Code, § 157 explains the procedure for returning a case to District Court:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).  This language "contains two distinct provisions: the first sentence [for cause shown] allows permissive withdrawal, while the second sentence [U.S. laws affecting interstate commerce] requires mandatory withdrawal in certain situations."  In re Coe-Truman Technologies, Inc., 214 B.R. 183, 185 (N.D.Ill.1997).  The movant has the burden of persuasion as to both mandatory and discretionary withdrawal.  Hawaiian Airlines,

1   Inc. v. Nesa Air Group, Inc., 355 B.R. 214 (D.Haw. 2006).  Any motion to withdraw must

2   be timely.  FTC v. First Alliance Mortg. Co., 282 B.R. 894, 902 n.6 (C.D.Cal. 2001).

3         The Ninth Circuit has stated in dictum that mandatory withdrawal of the reference

4   hinges "on the presence of substantial and material questions of federal law."  Security Farms

5   v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, 124 F.3d 999,

6   1008 n.4 (9th Cir. 1997).  To date, no Ninth Circuit case that has dealt directly with the

7   mandatory withdrawal standard.  The "substantial and material consideration" standard has

8   received criticism because of the obvious ambiguity of what constitutes "substantial and

9   material consideration."  In re U.S. Airways Group, Inc., 296 B.R. 673, 678 (E.D.Va. 2003).

10        Ambiguity notwithstanding, "[o]verwhelmingly courts and commentators agree that

11  the mandatory withdrawal provision cannot be given its broadest literal reading, for sending

12  every proceeding that required passing 'consideration' of non-bankruptcy law back to the

13  district court would 'eviscerate much of the work of the bankruptcy courts,' From a litigant's

14  perspective, such a reading would also create an 'escape hatch' by which bankruptcy matters

15  could easily be removed to the district court."  In re Vicars Ins. Agency, Inc., 96 F.3d 949,

16  952 (7th Cir. 1996) (internal citation omitted).

17        With regard to permissive withdrawal, "[t]here is no statutory definition of what

18  constitutes 'cause shown' under 28 U.S.C. § 157(d)."  In re Lars, Inc., 290 B.R. 467, 469

19  (D.P.R. 2003).  Typically, courts will first consider whether the proceeding is core or

20  non-core.  Further, the Ninth Circuit counsels that "a district court should consider the

21  efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy

22  administration, the prevention of forum shopping, and other related factors."  Security Farms,

23  124 F.3d at 1008 (internal citation omitted).

24                              DISCUSSION

25  I.    TIMELINESS OF DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

26        Plaintiff asserts that Defendants' Motion to Withdraw the Reference should be denied

27  as untimely.

28        Section 157(d) of Title 28 states as follows:

1
2
3
4
5

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce [emphasis added].

6
7
8

A motion to withdraw is timely "if it was made as promptly as possible in light of the developments in the bankruptcy proceedings." Security Farms, 124 F.3d at 1007 n.3 (quoting In re Baldwin-United Corp., 57 B.R. 751, 754 (S.D.Ohio 1985)).

9
10
11
12
13
14
15
16
17

Defendants contend that Security Farms, 124 F.3d at 1007, n.3, further states that section 157 is designed not to be a bright line rule but, rather, to be flexible in the context of the totality of the facts, circumstances, and developments of the each case. Therefore, Defendants assert that their Motion to Withdraw the Reference is timely because Plaintiff was on notice as Defendants included a jury demand in their Answer. Moreover, Defendants' assert that the Motion to Remand is timely because Plaintiff does not assert that Defendants' Motion causes him any prejudiced. See In re TPI Intern. Airways, 222 B.R. 663, 667 (S.D.Ga. 1998) ("Defendants do not argue that this motion has caused them any prejudice, so the Court concludes that Catchpole's motion is timely.").

18
19
20
21
22
23
24

A district court may withdraw the reference at any time. In re Hall, Bayoutree Associates, Ltd., 939 F.2d 802 (9th Cir. 1991). See also In re H & W Motor Express Co., 343 B.R. 208 (N.D.Iowa 2006) ("The court holds that the test for timeliness is ultimately one of reasonableness under the circumstances."); In re Kaplan, 146 B.R. 500, 503 (D.Mass. 1992) (finding that timeliness is determined based on a review of the facts of the specific situation). In light of the circumstances involved in this case, including Defendants' demand for a jury trial, Defendants' Motion to Withdraw the Reference is timely.

25

II.     MANDATORY WITHDRAWAL

26
27
28

Defendants assert that withdrawal of the reference is mandatory because Plaintiff's claims are non-core state law claims and because Defendants have demanded a jury trial in this Court. The mandatory withdrawal provision only deals with "consideration of both title

1   11 and other laws of the United States regulating organizations or activities affecting

2   interstate commerce." 28 U.S.C. § 157(d).  Consideration of state laws does not give rise to

3   mandatory withdrawal.  See e.g., In re Com 21, 2005 WL 1606357, *11 (N.D.Cal. 2005);

4   Diagnostic In'l, Inc. v. Aerobic Life Prods. Co., 257 B.R. 511, 513 (Bankr.D.Ariz. 2000).

5   Here, Plaintiff alleges state law claims.  None of Plaintiff's claims deal with "title 11 or other

6   laws of the United States regulating organizations or activities affecting interstate

7   commerce."  Thus, the nature of Plaintiff's claims does not warrant a finding that withdrawal

8   is mandatory.

9        Regarding mandatory withdrawal due to the preserved right to a jury trial, Defendants

10  cite Larry's Apartment L.L.C. v. Galam, 210 B.R. 469, 472 (D.Ariz. 1997), to aver that

11  "because bankruptcy courts cannot conduct jury trials on noncore matters, withdrawal is

12  mandated if the litigant is entitled to a jury trial on such matters."  However, the district court

13  case of Larry's Apartment, in turn, cites the precedential Ninth Circuit case of In re

14  Cinematronics, Inc., 916 F.2d 1444, 1451 (9th Cir. 1990), which states that "where a jury trial

15  is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case

16  to the district court is *appropriate*."  (emphasis added.)  The Court finds that withdrawal of

17  the reference may be appropriate, however, the Court is not convinced that withdrawal is

18  mandatory.

19  III.    VOLUNTARY WITHDRAWAL

20        A.    CORE VERSUS NON-CORE CLAIMS

21             1.    THIS COURT'S AUTHORITY TO MAKE A CORE / NON-CORE
                     DETERMINATION
22

23        Plaintiff relies on 28 U.S.C. § 157(b)(3) to argue that a determination as to whether

24  a claim is core or non-core shall be made by the bankruptcy court before the district court

25  may withdraw the reference.  However, Congress has vested jurisdiction of bankruptcy

26  matters in the district courts.  28 U.S.C. § 1334.

27        While section 157(b)(3) provides that a bankruptcy judge shall determine whether a

28  claim is a core or a non-core claim, that provision relates to the scope of authority for

1    bankruptcy courts under section 157 once federal jurisdiction is found to exist under section

2    1334.  See In re Gruntz, 202 F3d 1074, 1080 (9th Cir. 2000).  However, it does not prohibit

3    the district court from determining whether a proceeding is core or non-core where, as here,

4    there has been no prior determination.  Id.  Indeed, district courts routinely engage in such

5    analysis.  See, e.g., Williams v. Shell Oil Co., 169 BR 684, 692 (S.D.Cal. 1994); In re Kold

6    Kist Brands, Inc, 158 BR 175, 178 (C.D.Cal. 1993).  Thus, this Court does have authority to

7    determine, if necessary, whether the claims are core or non-core.

8               2.　　DISCUSSION OF CORE VERSUS NON-CORE CLAIMS

9       Title 28 U.S.C. § 157(b)(2) provides a non-exhaustive list of core proceedings.  The

10    claims Plaintiff has alleged in this lawsuit are not among the itemized claims in 157(b)(2).

11    "Courts attempting to analyze the status of a particular claim that is not listed in section

12    157(b)(2) have considered factors such as whether the rights involved exist independent of

13    title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy

14    petition, or were significantly affected by the filing of the bankruptcy case."  In re

15    Cinematronics, Inc., 916 F.2d at 1450 n.6.

16       "In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a

17    fashion similar to that of a magistrate or special master.  In noncore matters, the bankruptcy

18    court may not enter final judgments without the consent of the parties, and its findings of fact

19    and conclusions of law in noncore matters are subject to de novo review by the district court.

20    . . . In contrast to the bankruptcy court's authority in noncore cases, the bankruptcy court may

21    enter final judgments in so-called core cases, which are appealable to the district court."

22    Piombo Corp. v. Castlerock Properties (In re Castlerock Properties), 781 F.2d 159, 161 (9th

23    Cir. 1986), (internal citation omitted).

24       The distinction between core and non-core claims is important because it determines

25    how the claims must be treated.

26

       In non-core matters, the bankruptcy court acts as an adjunct to the district
court, in a fashion similar to that of a magistrate or special master.  In noncore
27       matters, the bankruptcy court may not enter final judgments without the
consent of the parties, and its findings of fact and conclusions of law in
28

1
2
3

noncore matters are subject to *de novo* review by the district court. . . . In contrast to the bankruptcy court's authority in noncore cases, the bankruptcy court may enter final judgments in so-called core cases, which are appealable to the district court.

4

Piombo Corp., 781 F.2d at 161 (internal citation omitted).

5

6

7

8

9

10

"Despite the importance of the core designation to bankruptcy adjudication, no exact definition of the term exists in the bankruptcy code.  Rather, as stated above, section 157(b)(2) contains a laundry list of core proceedings along with the admonition that core proceedings include, but are not limited to, the items listed."  In re Cinematronics, Inc., 916 F.2d at 1449-50.  This definitional shortcoming notwithstanding, courts are not without guidance in this area.

11

12

13

14

15

16

17

18

19

20

21

"Courts attempting to analyze the status of a particular claim that is not listed in section 157(b)(2) have considered factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case."  Id. at 1450 n.6 (9th Cir. 1990).  Claims that arise under or in Title 11 are deemed to be "core" proceedings, while claims that are related to Title 11 are "non-core" proceedings.  See e.g. Robertson v. Isomedix, Inc. (In re Int'l Nutronics), 28 F.3d 965, 969 (9th Cir. 1994) ("[c]ore proceedings are matters concerning the administration of the estate and rights created by title 11.") (internal quotation omitted).  "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered non-core."  Security Farms, 124 F.3d at 1008.

22

23

24

25

26

Plaintiff has asserted seven causes of action in his Complaint.  The causes of action are as follows: alter ego/piercing the corporate veil (Count I); fraudulent transfer (Count II); common law fraud (Count III); negligent misrepresentation (Count IV); Arizona RICO claim pursuant to A.R.S. § 13-2414.04 (Count V); violation of corporate trust fund doctrine (Count VI); and unjust enrichment (Count VII).

27

28

1    Defendants assert that because all counts in Plaintiff's Complaint are based on State

2    law, none of Plaintiff's claims are core claims. In their Reply, Defendants cite In re

3    Chemetco, Inc. 308 B.R. 339 (Bkrtcy. S.D.Ill. 2004) to contend that Plaintiff is silent as to

4    Defendants' assertion that all counts are noncore. Defendants further contend that Plaintiff's

5    silence denotes concession that all claims are noncore.

6    Contrary to Defendants' contentions, Plaintiff's Response is not silent regarding

7    whether the counts in the Complaint are core or noncore. In fact, Plaintiff cites In re Mankin,

8    823 F.2d 1296 (9th Cir. 1987) and In re Building by Jamie, Inc., 230 B.R. 36, 44-45 (D.N.J.

9    1998) to assert that at least his alter ego/piercing the corporate veil and fraudulent transfer

10    claims are core claims. See In re Mankin, 823 F.2d 1296 (fraudulent conveyance claim

11    based upon state law was core claim); In re Building by Jamie, 230 B.R. at 44-45 (Chapter

12    7 trustee's alter ego claim, seeking to pierce the corporate veil of corporate debtor, was a core

13    proceeding).

14    It is true that Plaintiff has not alleged causes of action that are created or determined

15    by a statutory provision of the bankruptcy laws. In fact, each of Plaintiff's claims is based

16    on state law. However, Plaintiff has submitted evidence to show that at least one count is a

17    core claim, with a strong assertion that other claims may be as well. In fact, here, as in In re

18    Mankin, the fraudulent transfer claim "directly relates to the restructuring of debtor-creditor

19    relations and is not merely an action to bring property into the estate." In re Mankin, 823

20    F.2d at 1307. Furthermore, it is possible that Plaintiff's alter ego/piercing the corporate veil

21    claim is a core claim as well. For these reasons, the Court is not willing to find that Plaintiff's

22    Complaint contains only noncore claims as Defendants assert.

23    Moreover, "[a] matter is related to the bankruptcy when the outcome of that

24    proceeding could conceivably have any effect on the estate being administered in

25    bankruptcy." Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) (internal citation

26    omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights,

27    liabilities, options, or freedom of action (either positively or negatively) and which in any

28

1  way impacts upon the handling and administration of the bankrupt estate." Walker v. Cadle
2  Co. (In re Walker), 51 F3d 562, 569 (5th Cir. 1995) (internal citation omitted).

3      The essence of this adversary proceeding is Plaintiff's attempt to collect a judgment
4  of $2,320,000 plus interest from the bankruptcy estate, arising out of a sale that was approved
5  by the Bankruptcy Court. Plaintiff also has asserted claims that the bankruptcy estate has not
6  been handled appropriately. Therefore, regardless of whether Plaintiff's claims ultimately
7  are determined to be core or noncore, at the very least, Plaintiff's claims are related to the
8  Don's Making Money bankruptcy proceeding.

9      B.    IMMEDIATE WITHDRAWAL OF REFERENCE BASED ON A SEVENTH
10            AMENDMENT RIGHT TO A JURY TRIAL IN THIS COURT

11      Defendants assert that withdrawal of the reference is appropriate because Defendants
12  have asserted and have retained the right to a jury trial in an Article III court. The Court will
13  consider whether such a right warrants immediate withdrawal.

14      Courts uniformly acknowledge the relevance of a party's right to a jury trial in district
15  court when deciding whether to withdraw reference to the bankruptcy court, however, a
16  number of courts have denied a party's request for immediate withdrawal of reference where
17  the basis of the request is a party's entitlement to a jury trial. See, e.g., Barlow & Peek, Inc.
18  v. Manke Truck Lines, Inc., 163 B.R. 177, 179 (D.Nev. 1993) ("The filing of a jury demand
19  in a non core proceeding which is related to a bankruptcy case should not result in the
20  District Judge on a knee jerk basis withdrawing the order of reference."); In re
21  Apponline.Com., Inc., 303 B.R. 723, 727 (E.D.N.Y. 2004) ("A rule that would require a
22  district court to withdraw a reference simply because a party is entitled to a jury trial,
23  regardless of how far along toward trial a case may be, runs counter to the policy favoring
24  judicial economy that underlies the statutory scheme.") quoting Kanai Corp v. National
25  Union Fire Ins. Co. (In re Kenai Corp.), 136 B.R. 59, 61 (S.D.N.Y. 1992)); In re Commercial
26  Financial Services, Inc., 239 B.R. 586, 597 (Bankr. N.D.Okla. 1999) (same); In re Hardesty,
27  190 B.R. 653, 656 (D.Kan. 1995) ("Even if a jury trial may constitute cause for withdrawal,
28  the district court may decline to withdraw the reference until the case is ready for trial.").

1       "The Court has the option of withdrawing the entire adversary matter, or withdrawing

2   only the trial portion, leaving the pre-trial and discovery matters to be handled by the

3   bankruptcy judge." In re Lars, 290 B.R. at 469.  The Ninth Circuit has acknowledged such

4   procedure in dicta: "[T]he Fourth Circuit has concluded that a bankruptcy court may

5   postpone withdrawal of the reference where a party asserts a right to a jury trial in the district

6   court.  In such an instance, a bankruptcy court may perform pretrial functions short of jury

7   selection and trial, and presumably could dismiss a party's action for failure to comply with

8   any pretrial order.  Here, however, the Northern District of California's local bankruptcy rules

9   dictate that the withdrawal of the reference is 'automatic' . . ." Dunmore v. United States, 258

10  F.3d 1107, 1117 (9th Cir. 2004), citing Official Committee of Unsecured Creditors v.

11  Schwartzman, 13 F.3d 122, 128 (4th Cir. 1993).  The District of Arizona, unlike the Northern

12  District of California, does not have a local rule barring the procedure outlined by the circuit

13  courts.

14      Even where the presence of non-core claims and a jury demand dictate that the

15  reference to the bankruptcy court ultimately may have to be withdrawn, a district court may

16  exercise its discretion not to withdraw the reference immediately where, for example, the

17  bankruptcy court already is familiar with the relevant facts and issues, and the issues triable

18  by a jury are not yet ripe for trial.  See, e.g., Barlow & Peek, 163 B.R. at 179; In re Orion

19  Pictures Corp., 4 F.3d 1095, 1101-1102 (2nd Cir. 1993).  Courts should strictly construe the

20  section 157(d) factors "so that it does not provide an 'escape hatch' out of bankruptcy court."

21  CIS Corp. v. Citicorp North America, Inc. (In re CIS Corp.), 188 B.R. 873 (S.D.N.Y. 1995)

22  (quoting In re White Motor Corp., 42 B.R. 693, 704 (N.D.Ohio 1984).

23      "Courts have also recognized that it serves the interests of judicial economy and

24  efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial

25  matters, even if the action will ultimately be transferred to a district court for trial." In re

26  Enron Corp., 295 B.R. 21, 28 (S.D.N.Y. 2003).  "The decision whether or not to withdraw

27  the referral immediately is frequently more a pragmatic question of efficient case

28  administration than a strictly legal decision.  While the bankruptcy court may be uniquely

1  qualified to conduct pre-trial matters in some core proceedings, in other cases such a referral

2  would be a futile detour, requiring substantial duplication of judicial effort." Schwartzman,

3  13 F.3d at 128 (internal citation omitted).

4          Defendants argue that reference to bankruptcy court ultimately will be withdrawn

5  because Defendants have preserved their right to a jury trial in this Court.  Defendants

6  contend that now is a good time to withdraw the reference because the parties are at the

7  initial stages of discovery, having just begun written discovery requests.

8          Plaintiff claims that discovery in this case has been ongoing since before the case was

9  filed in November 2005 and has continued ever since.  Plaintiff asserts that the Bankruptcy

10  Court is thoroughly familiar with this case, the parties, and the discovery performed to date.

11  In fact, Plaintiff states that the Bankruptcy Court was the court that approved the sale and

12  purchase in question.

13          As determined above, regardless of whether Plaintiff's claims are core or non-core,

14  clearly the claims are at the very least "related to" the bankruptcy proceedings.  Discovery

15  officially has been ongoing for at least a year.  In fact, Plaintiff filed his first motion to

16  compel discovery on May 11, 2006.[1]  Since that time, the Bankruptcy Court has granted two

17  motions to compel and two motions for sanctions in Plaintiff's favor.  Thus, it is clear that

18  the Bankruptcy Court is familiar with the facts of this case.  Therefore, without making a

19  determination as to whether Defendants have, in fact, preserved their right to a jury trial, an

20  issue Plaintiff does not seem to contend, the Court finds that it is more judicially efficient for

21  the bankruptcy court to continue to oversee this case through the discovery process.

22                                    **CONCLUSION**

23          In the interest of judicial economy, minimizing delay and costs to the parties,

24  uniformity of bankruptcy administration, and reasonableness under the circumstances, the

25  Court finds it more appropriate to deny without prejudice Defendants' Motion to Withdraw

26

27          [1] Plaintiff recently filed his Third Motion to Compel, which he filed with this Court

28  on February 20, 2007.

1   the Reference.  The Bankruptcy Court shall continue oversight of this case.  Defendants may

2   reassert their Motion at the appropriate time before trial.

3        Accordingly,

4   **IT IS ORDERED** that Plaintiff's Motion to Accelerate Ruling on Defendants' Motion

5   to Withdraw the Reference (Doc. 9) is granted.

6   **IT IS FURTHER ORDERED** that Defendants' Motion to Withdraw the Reference

7   (Doc. 2) is denied without prejudice to be reasserted at the appropriate time before trial.

8   **IT IS FURTHER ORDERED** that Plaintiff's Third Motion to Compel Disclosure

9   (Doc. 4) is denied as moot.

10  **IT IS FURTHER ORDERED** that Defendants' Motion for Judgment on the

11  Pleadings (Doc. 10) is denied as moot.

12       DATED this 1st day of May, 2007.

13

14

15  _____

16  Mary H. Murguia
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28